Good morning, Your Honors. May it please the Court, my name is David Hegege, and I'm here this morning on behalf of Ms. Lalone, the instant petitioner. Our contention is that the Board abuses discretion in denying her motion to reopen. The main issue here is the same as Selene. What evidence is needed or sufficient to show change country conditions to permit a motion to reopen? More specifically, can continuation of bad conditions constitute a material change when they are qualitatively different from the conditions that existed at the time of the petitioner's removal proceedings? Let me ask you to confront what I think is the major issue in this case, which is if Selene hadn't been decided in the meantime, I guess my inclination would be to say the Board didn't abuse its discretion in not finding a material change. But we have a case that says there has been a material change in conditions in Indonesia over this period of time with respect to Christians, and that is showing not very different than your client made. In fact, it was the same exact identical evidence. Well, it's a little bit different. In the one case, they're afraid of going to church. In the other case, they go to church and they're afraid. So I'm not sure that that's a material difference since maybe brave people can be afraid, too. But my question is what do we do with it? What does that case tell us about this one? What should we do with your case given Selene? Okay, so I think Selene has answered these questions, right? The evidence presented here is identical to that as in Selene, with the exception that you're saying there's one family member went to church, the other one is too afraid to go to church. But they both express danger. They both express fear. So what should we do with your case? Should we send it back to the BIA and say, which after all didn't have the benefit of Selene? Right. Selene came down in the meantime. You take a look at this case in light of Selene and re-decide it. Is that what you're seeking? And also they missed the disfavored group analysis, the tambulbulam. It had come out after the original removal proceedings. And they failed to look at this in light of this favored group as well. So they missed two things, Your Honor. What you're seeking is that we just send it back to them for them to re-analyze. No, what I'm seeking is for the court to grant or to grant the petition. Well, we generally don't do that because they haven't had the opportunity to analyze it in light of Selene. But if we were to send it back for the BIA to take a look at Selene and analyze it in the first instance, do we distinguish between the asylum and the withholding claims? If it's based on a motion to reopen, Your Honor, then it would necessarily be asylum, not withholding. Right. So you're not seeking to reopen the withholding application? No, Your Honor, just asylum. And to answer your question, Judge Horowitz, you said what if Selene was not there? Well, if Selene were not there, you'd have a – let me just say it this way. Because you don't have to argue. You'd have a harder case if Selene were not there, would you not? Well, it's similar, very similar in fact, to Malti. The government argues that it's just a continuation. But as in Malti, we're showing that it's not merely a continuation, but it's qualitatively different. And, in fact, we've addressed that. But we would have to find that there was no substantial evidence to support the BIA's determination that – to do this sort of colloquially, the BIA, I think, was saying things were awful in 2006 and they're still awful, so you haven't shown a material change. But that misses the point. That's exactly it. We don't disagree that things were awful. Things have always been awful. But you get to a point where they materially and qualitatively get worse. Well, so let me ask the question differently. In the absence of the 2010 – is it 2010, I think? The country report. Oh, yes. Okay. In the absence of that report, which I think was not available back at the time your client first applied, you'd have a difficult time showing a material change in conditions, wouldn't you? Right. But as – you know, with the duration of time, it's just getting progressively worse. And, you know, specifically, we were able to show upsurge in radicalism. We were able to show increased violence. We were able to show that the Indonesian government fails to protect the religious minorities, that they're, in fact, protecting radical militant groups, and that the officials are now actively partaking in the destruction of churches rather than just sitting back and letting it happen. Can I get back to Judge Wynn's question? Yes. Isn't the appropriate thing for us to do is to send this back to the BIA and say, reconsider all this in light of Saleem?  And, indeed, in Saleem, the court didn't either. The court just said, your decision so far was not based on substantial evidence, so take it back. Isn't that what we should be doing? I think we do meet and surpass substantial evidence. Well, you may well. But doesn't the BIA get the first crack at that once we tell them that there's a new legal frame – that they looked at under the wrong legal framework, or at least that our legal framework changed? I always hate to reverse an agency or vacate what they've done based on a decision that's come in the meantime that they haven't seen. And if you're right, you'll convince them. If you're not, and if you don't convince them, you'll be back here. But why should we tell them they must grant the motion to reopen? Because even if Saleem was not there, based on the existing law at the time, Malti, we have shown that it's qualitatively different. See, again, if we go back to Malti, Judge Reinhart stated that there were two relevant points in time. The first is the circumstances in the country at the time of the previous hearing, and then the circumstances in the country at the time of the motion to reopen. And if you take a look at these two times, it's qualitatively different. It's not just that it was bad then and bad now. That's how the BIA disposed of it in the first instance. In fact, if you take a look at the BIA decision, it doesn't really even address country conditions. It just says, oh, it's just continuation. It's cumulative evidence. But it's not. And that's exactly what we were able to show in Saleem as well. And yesterday, by way of the 28-J letter, I also submitted a case to the court. And I was aware of that case. You left out the cases where people lost even though raising the Saleem argument. There's at least three memdisps also that come out the other way. Right. But here, if you take a look, it's the same time period that was at play. And I know you have— I'm not sure the memdisps—my point is I'm not sure the memdisps adds anything to Saleem. Okay. It's exactly the same facts as Saleem, and the court says that we'll remand for that reason. Okay. And I'm not sure you can address them. There's three memdisps that come out the other way. They're not presidential either. And one of the reasons I struggle with this Saleem case is that our panel seemed to have applied it unevenly in subsequent motion to reopen cases. Yes, Your Honor. I'm going to reserve about two minutes that I have left, if that's okay with you. Sure. Thank you. Good morning, Your Honors. James Burnham here on behalf of the Attorney General. So I'll start with Saleem since that seems to be kind of at the heart of what we're here to talk about today. And let me pose what's really bothering me in this case for you so you see if you can answer it. Please. Saleem, I'm not sure there's any material distinction between the motion to reopen in Saleem and the motion to reopen here in terms of the motion. They look pretty much the same, I guess, as they were filed by the same people. And so in Saleem, the panel says this is substantial evidence that meets the prima facie standard for a motion to reopen on both prongs, change country conditions and persecution. But focusing on change country conditions, if Saleem says there's change country conditions between 2006 and 2013, and we're looking in this case between 2008 and 2013 for the same group, Indonesian Christians, and it's based on a 2010, I think, or a country report, which basically says it's the last couple of years that it's ramped up, how can we reach a different result? Well, I think Your Honor has elided what I view as the critical part of Saleem, which is that the original proceeding in Saleem was based on a completely different basis. Oh, no, I understand that point. And normally I think that would be a good distinction. Saleem didn't present any evidence in 2006 of persecution of Christians because he wasn't a Christian at that point, or she. I don't remember who it was. The difficulty is that that's not what the court of appeals says in Saleem. It doesn't say, hey, the reason the BIA aired it is it didn't compare it to conditions at the time because you didn't. It says this evidence that you submitted shows change country conditions in Indonesia since 2006. And if we're stuck with that decision, whether it's right or wrong, how do I get around it? Well, Judge Hurwitz, I guess I would say two things. First, I would say that I don't ‑‑ I would not regard that statement as part of the holding in Saleem, that this court now as a matter of law must conclude there are changed country conditions in Indonesia in that time period in all future cases. And I think that's why, although they're not precedential and thus not really binding here, the mem dispos go both ways. Well, I'm reading from Saleem. Analyzed under the correct standard, substantial evidence demonstrates that Saleem's motion to reopen meets the changed country conditions exception. This is the same motion to reopen. So I guess that leads to my second point, Judge Hurwitz, that in Saleem you didn't have ‑‑ in Saleem the delta was 100% between the first proceeding and the second proceeding because the basis for relief had changed. So all the evidence was essentially new evidence. Right? And so under the ‑‑ it's almost as though it was a brand new proceeding because the petitioner was giving a new ‑‑ You know, I understand the distinction. And it's a good ‑‑ I struggled with the same issue myself. But if in fact country conditions have changed based on the application that Saleem submitted from 2006 to 2013, how can we reach a conclusion that they didn't change from 2008 to 2013? Because as I understand ‑‑ They changed for one person but not for another? Well, I guess, Judge Hurwitz, I have two points, one broad and one specific to this case. On a broad level, I don't think you can divorce that statement in Saleem from the analytical framework in which it was made. So in Saleem you had a whole new basis. So I think the bar was lower for the petitioner to show the sufficiently changed conditions to force ‑‑ to require the BIA to go back and do its work all over again. And it was lower because his condition had changed? He had converted to Christianity. His condition had changed. Yes, sir. Therefore, the bar was lower with respect to whether country conditions had changed? Well, so the legal standard for a motion to reopen is based on the difference between the new evidence and the old evidence, essentially. And in that case, because the basis for relief had changed, the prior proceeding was much less relevant than here, where I think the prior proceeding really went through everything we're talking about today in great detail and actually came to this court and was affirmed on the same basis that petitioner has brought to us today. And so that gets me to my second point, Judge Hurwitz, which is I think this is a particularized analysis, which is why we don't just categorically grant all motions, you know, petitions for asylum and motions for withholding for every Christian in Indonesia or not. That's why it's not an on‑off switch. It's a particularized analysis as to every petitioner. And in this proceeding, this petitioner presented pretty extensive evidence in the first proceeding of various forms of ‑‑ I understand that. Yes. But then I go back to Salim. Right. Where the decision says there's a real showing of change in conditions really over the last several years. You know, it's always been bad, but it's gotten really much worse over the last several years. And so, again, it's an analysis of evidence, but it's the same evidence we have here. Why aren't we bound by that analysis of the evidence? I guess what I would say, Your Honor, is for the reasons I've given, I think if this court did that, that would at the very least be an extension of Salim into a situation like this where it's really the same basis for withholding. So if you're right about that, why shouldn't we give the BIA the first shot at this? It wasn't aware of Salim at the time of the decision. Why don't we send it back to them and say we've had an intervening decision. Reconsider the motion to reopen in light of that. I think if the court concludes that that was a holding in Salim and that it's binding, then I think that would be an appropriate result. I just disagree. I disagree that that was the holding in Salim, and I disagree that it was binding. And I guess I have one other reason. And I take your point that Salim's a strange case. Right. Of course everything you're submitting is new because you weren't a Christian back at the time. Right. And so you didn't put in any evidence of it. And I would read that as being the kind of central thrust of Salim and something that it's hard to divorce the other statements in the case from. One other, if I could, Your Honor, please. Finish your point because I have another question. I would say that also, but even if, even if you think that's part of the holding in Salim and even if the court concludes that that's binding here, I do think you still need to find that this petitioner has shown sufficient particularized. Good. That was exactly the question I was going to ask you. So what's the difference between going to church and being afraid and not going to church because you're afraid? Because that's the new evidence, if you will, of a particularized fear. And Salim, as I recall, and I may have the two reversed, somebody in the family said, we don't go to church anymore because we're afraid. And in our case, the one in front of us today, the brother says, we go, but we're afraid. Is there any material difference between that? I mean, not. Are Christians supposed to be brave? Aren't they supposed to go and face their fears? I don't know that the United States has a position on that. But I guess what I would say, Your Honor. Or do I? Yes, right. I guess what I would say, Judge Hurwitz, is that in Salim, those are fairly similar statements. I don't disagree with that. I just think that in Salim, the difference is that in this case, the BIA and this court have already considered this petitioner's representation that they were afraid to go to church and that bad things had happened at church. I mean, if I could just quickly walk through the evidence that was considered in the first proceeding. Petitioner submitted evidence that there were bomb threats against her church. That's in AR-364. There were anti-Christian riots in 1998 in which a friend of hers was raped and the building she lived in was burned down. That's in AR-365. There was an armed attack by radical Muslims on a hospital where Christians who did not flee had been beheaded. That's in AR-365. She was harassed at her food stall, and people were spreading rumors that she served pork, so it kind of destroyed her business. That's in AR-365. So that was all in the first proceeding. And that was all considered by the BIA and deemed insufficient for relief. And then this court, in the petition for review from that proceeding, upheld that as supported by substantial evidence, including, and my colleague mentioned the disfavored group analysis, including under the disfavored group analysis. And the line from this court, and it's a mem dispo, but it's this case, so I think it's relevant, was, and I'm quoting, substantial evidence also supports the agency's finding that even under a disfavored group analysis, LaLeno failed to establish a risk of individualized harm sufficient to demonstrate a welfare. And I think that's why I said to your colleague, and I didn't say it, you know, in any binding fashion, in the absence of Salim, you'd have a hard time. But so we're still stuck with a court of appeals opinion that says, notwithstanding however awful it may have been before, it's worse now. Right. And I guess what I would say, Judge Hurwitz, is that the distinction between this and Salim is that in Salim, it was considering the evidence sort of tabula rasa because the board had never considered it before. And I think that's a significant distinction. What do we do, though? Going back to your point of if we were to remand this, that would be an extension of Salim. I don't quite understand that point. Maybe you can articulate it again. Because what we're doing is we're looking at Salim on essentially the exact same group, and we're saying another panel has said that the conditions have substantially deteriorated in recent years. I don't understand why it's an extension of Salim to say, well, this guy's in the same situation. Have the BIA take another look at that. Certainly, Judge Wynn. So I guess just taking this to sort of a big picture perspective, motions to reopen are disfavored, of course, because it's a second bite at the apple. It's a collateral attack on the original proceeding, et cetera. So the analysis in a motion to reopen is always about the delta between the first proceeding and the second proceeding. What's different? What's new? And so I think, Judge Wynn, that even if another panel has concluded that there was a change in country conditions, that doesn't free future panels from the need to still perform that. Well, what you're really saying, though, is the first panel was wrong. What you're really saying is the first panel. I would never say that, Your Honor. Well, that's okay. I can say it. I can say it. What you're really saying is that I have a deed. We're stuck with it. Yeah. The first panel found change in country conditions, but they really didn't look carefully enough back to the way things really were in 2006. Because if they had and they had only looked at, you know, the evidence, what they would have found was things were exactly the same back in 2006. Well, I guess, Your Honor, I would have two ‑‑ if I may, I'm over my time, but if I may interject. Go ahead, please. You know, the IJ decision in this case was in, I think, 20 ‑‑ I have it written down somewhere, 2011 or 2012. 2011, I think. And this panel's decision was in 2012. So some of this evidence that we're talking about in Saleem had been factored in. But I don't think ‑‑ it's not that Saleem is wrong. It's that Saleem was performing a different analysis. Because in Saleem, the difference was 100%. All the evidence was essentially new because the basis for relief had changed. In this case, you still have to compare the original proceeding to this proceeding and conclude that the petitioner has presented, my notes are a mess, evidence that is material, qualitatively different, and not available in the prior proceeding. And so unless the court finds that the petitioner has carried that burden, I don't think it can grant the motion to reopen or send it back to the BIA. But your claim is that it was available in the prior proceeding and the BIA took it into account and made its decision based on that. And therefore, the panel's subsequent decision that conditions for Christians in Indonesia qualitatively changed between 2006 and 2013 was based on a ‑‑ it was starting from scratch. That is ‑‑ I think that is essentially what I'm saying, Judge Eaton. I mean, not all of the evidence that Saleem considered would have been available to this petitioner because, you know, Saleem came out in 2016 and the petitioner's original proceeding was in a ‑‑ original IJ decision was in 2013. But, yes, that is essentially what I'm saying. Much of the evidence that underlay the opinion in Saleem was available before. And I just don't think that Saleem ‑‑ Saleem doesn't say that the court doesn't need to perform the basic reopen analysis of comparing the prior evidence to the current evidence. It just makes an observation about what's going on in Indonesia, holding if the court concludes that it's the ‑‑ Is there any doubt in looking at the news that conditions have deteriorated for Christians in recent years, the past two, three years or so? Is there any doubt in the government's mind on that? I think it was ‑‑ I mean, I think the conditions in Indonesia for Christians I don't think have been great for some time. And so I'm not ‑‑ I'm just not equipped to opine on whether it's worse. But I take it the government's position is that even if they've gotten worse, they haven't gotten materially worse? I think the government's position is that the evidence in this case doesn't show that they've gotten materially worse for purposes of a motion to reopen. Is there further questions? Thank you. No, I think we've got it. Thank you. Thank you. Thank you, Your Honors. There's some confusion that I think needs clearing up. I was the appellate attorney for Salim. And at the prior ‑‑ We noticed. Yeah. At the prior level, at the prior level, the attorney had submitted articles relating to Christianity. So it wasn't a tabla rasa, as my colleague had suggested. And the reason that the attorney had submitted that was to show what was happening to religious minorities in Indonesia. So we weren't going from a hundred, you know, from zero to a hundred percent. But rather, the court took that limited evidence that was presented back in 2006 and compared it to what was presented in 2013. And they saw that over time, things had gotten materially worse. Let me give you a hypothetical. We have two Indonesian Christians applying for asylum at the same date. One of them makes a terrible record, doesn't put in very good evidence. The other one makes a really good record, puts in lots of evidence of persecution. Sometime later, they both come back with the same evidence on a motion to reopen. Their motions to reopen are identical. For one of them, it's quite different evidence than was there before. The other one, it's pretty close to the evidence that was there before. Does one of them win and the other one lose? No, I don't think that to be the case, Your Honor. I think we have to follow the precedent. The precedent for us is selling. Whether the panel thinks that the previous panel made a mistake or not, that is the precedent. But I guess my question is, since the evidence must be materially different than the evidence available at the time, do we say, well, gee, your evidence really is materially different. Guy who did a bad job the first time, but guy who did a good job the first time, your evidence is not materially different. Right, so I think that's where the court can make a judicial inference or the court can look at the State Department reports and irrespective of what was submitted or not submitted, the court can make that determination. I don't think it's binding just on what was submitted at the first time and what wasn't. Well, that's the framework of analysis is to make a comparison between the initial decision and the motion to reopen. What's interesting is that generally we don't take judicial notice of the facts and proceedings in another case. But in the immigration arena, with regard to country reports, you do see cases kind of going all over the place on that point. That's my point. You can take judicial notice as the country conditions reports. The court is not bound by just what's in the record of proceedings. All right, I take your point. One other thing that I needed to clarify. You're over your time. Let me see if my colleagues have any questions. All right, thank you very much for your argument. Thank you.
judges: Nguyen, Hurwitz, Eaton